FILED - GR
September 18, 2023 1:00 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: /s/ 9-18

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
SOUTHERN DIVISION

Phillip A. Brown II,
    Plaintiff,

v.

Dr. Todd Cioffi et al,
    Defendants.
_____/

District Court  :

Honorable      :  _____

1:23-cv-987
Phillip J. Green
U.S. Magistrate Judge

Phillip A. Brown II - #271566
In Rem Versum
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036
_____/

Todd Cioffi - CPI Director
Calvin Prison Initiative
Calvin University
1855 Knollcrest Cir. SE
Grand Rapids, Mich. 49546

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

This is a civil complaint and tort action for breach of contract, where Mr. Brown's right to free speech / expression, religion, equal protection, and due process were denied by a retaliatory scholarship revocation.

Mr. Brown demands a jury trial on all issues of fact or legal damages. Plaintiff will also request a Preliminary Injunction and Declaratory Ruling. See Bonnell v. Lorenzo, 241 F.3d 800, 809-10, 821 (6th Cir. 2001)

There is NO available legal remedy where the State denied "jurisdiction" over grievances and Calvin University (CPI's) expulsion is a final order without appeal. See Tinker v. Des Moines Schools, 393 U.S. 503, 508 (1969)

Defendants have violated free speech rights (Mich. & U.S. Const.), equal protection, breached contract, witheld property, conspired, and repeatedly engaged in acts of bullying, harassment, intimidation, and retaliation against Mr. Brown for protected conducted as a college student. These actions were performed in concert with the MDOC under color of law.

INTRODUCTION

In 2019, Mr. Brown was awarded a merits scholarship to Calvin University based upon academic ability, prison record, positive community relations, written essay, recommendation, and leadership characteristics. Phil is a 45 yr old white male christian from Oakland County, serving life. Phil was 1 of 20 prisoners selected statewide each year for this Bachelor's degree Scholarship in Faith & Community Leadership. (See 5/23/19 Letter)

The Calvin University - Handlon Campus is located inside the prison at (MTU) in Ionia. He arrived on July 9th, 2019, and was confronted by an MTU worker named Jodi Heard who was the CPI 'enforcer.' She told him that she would get him terminated from his job as a college student in the program, lose his scholarship, and transferred. Since then, Phil was targeted and subjected to overt, implicit, and explicit threats by Director Todd Cioffi and other MDOC agents like Mr. Mates for free speech and academic conduct.

On 9/14/20, these threats manifested when Phil was falsely accused and expelled for writing an "unsolicited note" (question) attached to his Student Profile Questionnaire for his new Christian Formation Class (Mentorship) in Fall 2020. In fact, this was requested by Prof. Rylaarsdam.

The Defendant(s) have engaged in a pattern of censorship, bullying, intimidation, harassment, and retaliation which culminated in Mr. Brown's expulsion and termination of his Calvin University Bachelor's scholarship. Concurrently, the State unlawfully "removed" him from his paid MDOC job as a college student on 9/14/20 without any due process contrary to MDOC Policy.

Defendants have violated Mr. Brown's rights under the 1st Amendment (Speech, Exercise, & Establishment Clauses), Mi. Const. 1963, Art. 1, §5, breached contract, denied process, MDOC Policy, and Calvin's own Policy.

## INTERESTED PARTIES

1. Phillip A. Brown II, (Plaintiff), is a 45 yr. old white christian man who is a prisoner in the M.D.O.C. and is serving a life sentence.

2. Dr. Todd Cioffi (Defendant) is the current Director of the CPI program and operator of the Calvin Prison Initiative (LLC). He is also employed by Calvin University as a professor with a Ph.D. in Systematic Theology.

3. Kary Bosma (Defendant) is the Co-Director for Calvin Prison Initiative and is employed by Calvin University. Her degree is in Criminology.

4. Calvin Prison Initiative (Defendant) is a for profit business that is registered as an LLC in the State of Michigan (Lic. # E6150G).

5. Calvin University (Defendant) is a private christian university that accepts funding from the federal government and has agreed to follow MDOC Policy while operating publicly through CPI inside a public Michigan prison.

   A. Calvin University Presidents Dr. Michael LeRoy & Dr. Wiebe Boer
   B. Calvin University Office of Student Conduct - Mr. Martin Avila
   C. Provost Noah Toly
   D. Board of Trustees

## STANDING

The Defendant(s) caused actual damage with credible threats to his free speech rights (in and out of class), damage to his reputation and finances, terminated his Calvin University scholarship in good standing, and also retalliated against him without any actual charged CPI or MDOC misconduct. These actions were taken in a concerted partnership with the MDOC which violated federal law, MDOC, and Calvin Policy causing injury to Mr. Brown.

## JURISDICTION

This Court has Art. III jurisdiction and statuory under 28 USC §1331; §1343 and 42 USC §1983 to decide legal issues and hold a jury trial.

## ESTABLISHED STATE & FEDERAL LAW RIGHTS

Michigan Constitution 1963, Art. 1, §5

> "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or the press."

United States Supreme Court

> The law protects "the essentiality of freedom in the community of American universities... [which protects] academic freedom and political expression."
> 
> Sweezy v. New Hampshire, 354 U.S. 234, 250 (1957)

Michigan Supreme Court

> The right to free speech is "fundamental in our democratic society" and the 1st & 14th Amendment now "take away from government, state and federal, all power to restrict freedom of speech, press, and assembly where people have a right for such purposes."
> 
> People v. Harrison, 383 Mich. 585, 593-94 (1970)

## IMPORTANT LEGAL QUESTIONS PRESENTED

1. WHETHER THE MDOC AND COLLEGE OFFICIALS MUST RESPECT THE TENETS OF THE 1St AMENDMENT PRINCIPLES OF FREEDOM OF SPEECH / EXPRESSION WHICH PROHIBITS STATE SPONSORED INFRINGEMENT AND/OR RETALIATION UPON THE FUNDAMENTAL RIGHTS OF A COLLEGE STUDENT IN ACADEMIA?

        Plaintiff contends: "YES"

        Defendants contend: "NO"

2. WHETHER A MERITS BASED SCHOLARSHIP COMMITMENT TO A BACHELORS DEGREE PROGRAM FROM CALVIN UNIVERSITY DEMONSTRATES A VALUABLE PROPERTY OR LIBERTY INTEREST UNDER THE DUE PROCESS CLAUSE IN LIGHT OF SUBSTANTIVE PREDICATES FOR REMOVAL IN CONTROLLING MDOC POLICY?

        Plaintiff contends: "YES"

        Defendants contend: "NO"

3. WHETHER CPI AND DR. CIOFFI WERE SUFFICIENTLY LINKED TO STATE ACTORS AND THE MDOC WHILE CONDUCTING CLASSES IN A STATE PRISON TO BE DEEMED ACTING UNDER COLOR OF STATE LAW ACCORDING TO CIRCUIT LAW IN BROWN V. STRICKLER, 422 F.3d 1000, 1001-02 (6th Cir 1970)?

        Plaintiff contends: "YES"

        Defendants contend: "NO"

4. WHETHER PLAINTIFF MAY PURSUE A BREACH OF CONTRACT / TORT ACTION AGAINST DR. CIOFFI, CPI, CALVIN UNIVERSITY, AND/OR THE MDOC FOR UNLAWFUL TERMINATION OF MR. BROWN'S SCHOLARSHIP AND BENEFITS?

        Plaintiff contends: "YES"

        Defendants contend: "NO"

## KEY FACTS SUPPORTING COMPLAINT

A.   In 2019, Mr. Brown was recommended by the Kinross Correctional Facility and RUM Todd Menard (a degreed MDOC professional), for the Calvin University Scholarship program and CPI (Calvin Prison Initiative) due to his "strong desire to further an advanced education" and because Mr. Brown "would make for a devoted student on his way to completing his dreams of a higher education." (See Written Recommendation by RUM Todd Menard)

B.   On May 23, 2019, Mr. Brown was issued a verified letter of acceptance from Calvin University and Calvin Prison Initiative (CPI) which confirmed his Bachelor's Degree Scholarship award. The letter by Dr. Todd Cioffi was signed on behalf of CPI and Calvin University. It expressed confidence in his ability to perform academically and encouraged future social engagement.

C.   On July 9, 2019, Mr. Brown was transferred from Kinross Correctional to MTU (Richard Handlon Facility) in Ionia, where he was enrolled as a full time Calvin University student for in-person learning and classified by the MDOC for his paid job as a student enrolled in a college program. (See MDOC Classification Report, CSX-175)

D.   Over the next year (4 semesters) (8/1/19 - 9/14/20), Mr. Brown earned all 25 credits and held a cumulative GPA of 3.86, completed every assignment, and never missed one class. (See Transcipt - Report Card)

Mr. Brown held positions as a contributing member of the Writer's Club, Theology Club, Restorative Justice Club, and the Handlon Tabernacle Choir.

E.   Mr. Brown's rights and person were repeatedly threatened with two "advisement" letters dated 12/17/19 and 6/9/20 which characterized his written communications with educators as "behaviors" and if they continued, that "we will consider disciplinary action up to and including dismissal." These overt, explicit, and credible threats were made without due process.

F. Mr. Brown was overtly threatened for protected conduct in academia, viewpoints, speech, ideas and initiating dialogue for community programs. His communications with college educators and the MDOC were censored.

G. On 9/14/20, Dr. Cioffi issued an expulsion letter that caused actual injury to Brown's loss of wages, scholarship, housing, ability to worship, community relations, and reputation. This expulsion order was signed by CPI Director Dr. Todd Cioffi in conjunction with unnamed "prison administrators" at the time of dismissal without any hearing, evidence, or notice of appeal.

MDOC administrators then forged key classification documents (CSX-175) stating Brown was "removed" from Calvin for "behavior" and is "unemployable" contrary to PD 05.01.100 and MTU 05.01.100 (B) which limits discretion, requires evaluations, and substantive predicates after a hearing.

H. These actions were encouraged, approved, and endorsed by Defendants Heard, Mates, Sutton, Gay, and the MDOC Director Washington.

I. Mr. Brown filed two MDOC grievances that were flatly rejected by MDOC for lack of jurisdiction. There is NO available State administrative remedy.

J. Mr. Brown immediately requested re-consideration, reinstatement, submitted a formal appeal, and wrote countless letters to the CPI office and Calvin University Offials for over 2 1/2 years. No response was provided.

K. Defendants actions were executed without actual charge, notice, opportunity to be heard, fact finding hearing, or notice of appeal.

L. These judgments are predicated on inaccurate and clearly erroneous facts. Each letter failed to allege any academic infraction, CPI Code Violation, or MDOC misconduct. (See P.D. 03.03.105 / CPI Code of Conduct).

M. The expulsion letter falsely characterizes two prior advisements as "letters of discipline" even though Mr. Brown did not violate any CPI rule. Furthermore, these letters disprove Dr. Cioffi's retrospective claim.

N. Mr. Brown formally requested the Defendants return his Acadmic Writings, Notes, files created, and physical objects he created (Clay Jar Project), which are his physical, intellectual, and personal property.

O. Mr. Brown had an established property and liberty interest in this case.

P. After being unlawfully "removed" by Mrs. Ripley, Heard, Cioffi, and MTU officials, he was sent to Muskegon prison. Brown was then stifled in his attempt to enroll in 2021' at Hope College (Dr. Cioffi's alma matter) based on his influence within the MDOC (CFA) and the administrators at Hope.

Q. Dr. Cioffi denied a fair hearing, appeal, or readmission by creating a toxic environment and negatively influencing key decisions makers. Calvin officials approved, encouraged, and agreed to this wrongful conduct.

R. On November 1, 2022, a formal appeal to MDOC Education Manager Heather Gay requested a full investigation, documents and evidence relied upon, expungement, reinstatement, and a list of questions about college programs. No substantial response was provided or evidentiary documents were produced.

S. About November 3rd, 2022, Mr. Brown filed a 2nd formal appeal to the Calvin University Office of Student Affairs (Mr. Avila). This formally requested documents and notified all Board of Trustees of the violations.

T. On March 17, 2023, an email was forwarded to Calvin University Provost Noah Toly that requested a formal investigation, production of Mr. Brown's documents and records, actual appeal process, including both corrective and restorative action in this case. No substantial response was provided.

U. On June 6th, Mr. Brown was transferred to Lakeland Correctional Facility.

V. A letter to all State (MDOC) and Calvin University Officials was forward regarding Mr. Brown's concerns about the college education programs and the particular injustice associated with the facts of his case. (See attached)

SOURCES OF PROTECTED CONSTITUTIONAL INTEREST

1. Mr. Brown has an established liberty interest under the 1st Am. right to be free from termination, disciplinary sanctions, or retaliation in a manner that violates his free speech and due process rights as a college student. Healy v. James, 408 U.S. 169, 171-81 (1972); Sweezy v. N.H., 354 U.S. 234, 249-50 (1957) ("The essentiality of freedom in the community of American Universities is almost self-evident."); Newsom, 888 F.2d at 375, 377.

2. Mr. Brown has an established property interest as a student employee who made $2.62 per day for his college / work status under contract agreement between Mr. Brown, the MDOC, and Calvin University. See P.D. 05.01.100 (AA) Benefits also include studyhall, library access and the computer agreement.

3. Mr. Brown has a property interest in his written notes, academic papers, jar of clay, and his computer files that are his thoughts and work product.

4. Mr. Brown has an established property and liberty interest based on his scholarship commitment, agreement, and acceptance to Calvin University and CPI for a 5 year Bachelor's degree program. (See Acceptance Letter)

5. Mr. Brown has a property and liberty interest under State law in remaining free from unlawful interference, harassment, and removal from this post-secondary education program based on mandatory language and procedures. Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989)

 Under then MDOC Policy, a prisoner assigned to a post-secondary education & work detail cannot be "removed" involuntarily without the mandatory due process protections and hearings (like Calvin Policy). See Policy Directive 05.01.100 (KK), (LL), (MM); MTU-OP 05.01.100 (B); and P.D. 05.02.112 which govern "Education Programs For Prisoners." See also "Program Classification" and Calvin University Disciplinary Policy. Rules apply to "post-secondary education" programs. OP 05.02.112 (B)(3)(d).

Cause of Action

This preliminary complaint states the following causes of action:

1. 1st Am. / Mi. Const., Art. 1, §5 Violations (Speech/Assoc./Exercise)

2. 1st Am. Retaliation / Harassment / Bullying for Protected Conduct

3. Right to Fair and Just Treatment (Mi. Const. 1963, Art. 1, §17)

4. Equal Protection / Due Process / Right to Appeal

5. Viewpoint Discrimination

6. Overbroad and Vague Constitutional Challenge to CPI's Code of Conduct

    Respect Clause Policy -

    Point #2, ¶2 "If CPI students are involved in prison discipline, the subject of an incident report and/or receive tickets, their status in the program will be reviewed on a case by case basis. Decisions for dismissal will be made collaboratively by the Director of the CPI, the committee, and Administrators at Handlon/MTU."

7. As Applied Constitutional Challenge to CPI's Code of Conduct

    Rules and Policies for Student Behavior in Class... "Any communication, whether in person or through Calvin's digital technology, must remain focused on related coursework."

8. Fraud and Conspiracy / Bad Faith

9. Breach of Contract / Tortious Interference

10. Theft / Unlawful Taking of Property

## OVERVIEW

The University "academic community" and students retain 1st Am. rights "consistent with fundamental constitutional safeguards" and protection from all forms, even subtle government interference which stifles student speech.

Healy v. James, 408 U.S. 169, 171-183 (1972)

The college classroom is the "marketplace of ideas" and the Court broke no new ground by reaffirming the Nation's goal of safeguarding academic freedom in college. See Keyishian v. Board of Regents, 385 U.S. 589, 603 (1967). The right to free speech applies with no less force "in college than in the community at large" which requires the "widest latitude for free expression and debate consonant with the maintenance of order." See e.g. Healy v. James, 408 U.S. 169, 171, 180-183 (1972).

Educational institutions operating in public spaces violate the Constitution when they "restrict speech or association simply because it finds the views expressed by a group to be abhorrent." Id. at 187-88. Consequently, content based restrictions are presumptively prejudicial.

The general rule is that "the speaker has the right to tailor the speech" which "applies not only to expressions of value, opinion, or endorsment, but equally to statements of fact." See Hurley v. Irish-American.., 515 U.S. 557, 573 (1995). When a restriction of speech is content based, the "most exacting scrutiny" or strict scrutiny standard applies. See Turner, 512 U.S. at 641-42. That standard applies in this case. See also Blau v. Fort Thomas Schools, 401 F.3d 381, 393 (6th Cir. 2005); Seal v. Morgan, 229 F.3d 567, 574 (6th Cir. 2000); BL v. Mahoney, 964 F.3d 170, 177 (3rd Cir. 2019) (Holding that free speech extends to all aspects of "the process of attending school" under clearly established federal law.)

The right to free speech prohibits government endorsed discrimination against speech based on the ideas or opinions it conveys. See IANCU v. Brunetti, 139 S.Ct. 2294, 2299 (2019). The Court has found a party may claim viewpoint discrimination even when he is not the only one targeted for censorship. See Rosenberger v. Rector.., 515 U.S. 819, 828, 830-31 (1995) (Holding that restrictions on substantive content or message is presumed unconstitutional.); see also Turner Broadcasting System Inc. v. FCC, 512 U.S. 622, 641-43 (1994). While all speech is contextual, school officials do not have unfettered discretion to regulate student speech in college academia. See Lowery v. Everard, 497 F.3d 584, 587-88 (6th Cir. 2007)

Our Universities "unquestionably benefit from the free flow of ideas, debate, and deliberation on campus. These institutions should strive to foster an environment where critical thought, and sometimes strong disagreement, can flourish." Consequently, our "freedom of expression and academic freedom are at the very core of the mission of colleges and universities, and limiting the expression of ideas would undermine the very learning environment that is central to higher education." Free Speech Inc. v. Killeen, 968 F.3d 628, 632 (7th Cir. 2020); see also Calvin Policy.

The quality and creative power of student intellectual life remains a vital measure of a school's influence and without free speech our schools risk fostering a pervasive bias and hostility to student's free speech & individuality that violates the Constitution. Rosenberger, 515 U.S. at 845.

The basic rights of a student to make their own rhetorical choices, whom they associate with, what political party they endorse, how they view their religious tents, values, and their speech are protected conduct. State endorsed actors cannot retaliate for exercising these basic rights.

CONCLUSION & RELIEF REQUESTED

While a good education is priceless, the value of a merits scholarship to Calvin University is worth about $37,806 per year for tuition and fees. (See 2023 World Almanac, p. 396). For (5) years, that is about $189,030.

Mr. Brown has been wrongfully denied the ability to complete his college education and degree without undue interference by the defendants. This is contrary to the express agreement, commitment, relevant policies, and a legitimate entitlement without due process or fair treatment.

Mr. Brown was entitled to continue his enrollment in his program. The actions of Dr. Cioffi, CPI, the MDOC, unnamed administrators, Calvin University officials, and the Board of Trustees shows bad faith, unfair treatment, tortious interference, breach of contract, and an intentional agreement to oppress and stifle Brown's fundamental rights and interests.

The defendants' have now breached contract and violated their duty according to their own Policies. This requires liability jointly and severally for the cost of the scholarship since Mr. Brown has been expelled. Mr. Brown is entitled to the full cost of the scholarship where the relationship is irreparably broken and Defendants are indifferent.

Secondly, Mr. Brown is entitled to recovery all his real property including all his notes, papers, submitted assignments (including LRS), his jar of clay, and all his computer files created which belong to him.

Third, Mr. Brown is entitled to recover back pay of $2.62 per day of paid work or about $55 per month for his wrongful termination of his job pay as a college student since his termination date of 9/14/20, which totals about $1,925 back pay and prospectively moving forward each month until he finishes his Bachelor's Degree program through Western Michigan University.

Fourth, that any Constitutional violations found and/or retaliation must be compensated with damages at a cost of $50,000 for each violation. Further, that punitive damages may be sought for each upon a trial.

Wherefore, the Plaintiff respectfully requests that this Court now enter an Order for settlement conference or trial date and find as follows:

1. Mr. Brown's liberty and free speech has been stifled and threatened;
2. Mr. Brown's rights were violated without any due process of law;
3. That Defendant(s) acted with bad faith in their actions / judgment;
4. Mr. Brown has a significant liklihood of success on the merits;
5. Mr. Brown is entitled to be made whole and fully compensated;
6. Mr. Brown is entitled to back & future pay concerning damage to wages;
7. Mr. Brown is entitled to protection from retaliatory expulsion and any adverse actions; see Siggers-El v. Barlow, 412 F.3d 693, 696 (6th Cir 2005);
8. That all letters and judgments issued by Dr. Cioffi must be expunged, vacated, and removed from all records which includes collateral consequences of same by State (MDOC) officials such as classification and computer files.

We ask this Court to find that Defendant acted without disciplinary authority, contrary to MDOC and Calvin University policy, and in a manner which shows bad faith and violated Mr. Brown's 1st Am. rights without due process as required by the Constitution and Policies. This failed to safeguard his academic freedom, personal beliefs, and political association. See Healy v. James, 408 U.S. at 181, 183; P.D. 05.01.112 (N).

### Verification of Complaint

The undersigned, being first duly sworn under the penalty of perjury, does hereby affirm that the statements made in this Complaint are true to the best of my knowledge, information, and belief. 28 USC §1746

Respectfully Submitted,

*Phillip A. Brown II*
9-11-23

Phillip A. Brown - # 271566
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

Cl
U.
11
G

Phillip A. Brown - # 271566



\_ERK OF THE COURT
S. DISTRICT COURT
0 MICHIGAN NW
RAND RAPIDS, MICH. 49503