UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PHILLIP A. BROWN II,

                Plaintiff,               Case No. 1:23-cv-987

v.                                  Honorable Jane M. Beckering

TODD CIOFFI et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility

(MTU) in Ionia, Ionia County, Michigan. Plaintiff sues Director of the Calvin Prison Initiative (CPI) Doctor Todd Cioffi; CPI Co-Director Kary Bosma; CPI, LLC; Calvin University; Unknown Parties #2 named as Calvin University Board of Trustees; Calvin University Presidents Doctor Michael LeRoy and Doctor Wiebe Boer; Provost Noah Toly; and Calvin University Office of Student Conduct Martin Avila.

Plaintiff also sues MDOC Director Heidi Washington, MDOC Education Manager Heather Gay, MTU Acting Deputy Warden John Sutton, MTU Inspector and Acting Assistant Deputy Warden Mathew Mates, MDOC employee at MTU and "CPI's enforcer" Jodi Heard, Unknown Parties #1 named as "Unnamed Administrators who 'collaborated' with [Defendant] Cioffi," and MTU Classification Director Mrs. Unknown Ripley, "who forged key documents." (ECF No. 12, PageID.70.)

In his amended complaint, Plaintiff alleges that in 2019, he was recommended for the CPI scholarship program by Kinross Correctional Facility Resident Unit Manager Todd Menard due to his strong desire to further an advanced education. On May 23, 2019, Plaintiff received a letter of acceptance to CPI signed by Defendant Cioffi. On July 19, 2019, Plaintiff was transferred to MTU and was enrolled in Calvin University as a full-time student. Plaintiff was also classified by the MDOC as a paid college student enrolled in a college program. (*Id.*, PageID.76.)

Over the next four semesters, Plaintiff earned 25 credits and held a cumulative GPA of 3.86, having completed every assignment and attending every class. (*Id.*) Plaintiff was also a contributing member of the Writer's Club, Theology Club, Restorative Justice Club, and the Handlon Tabernacle Choir. (*Id.*) Plaintiff asserts that Defendant Heard routinely entered educational spaces during studies and made threatening comments, often in front of Defendant

Cioffi and other students. Plaintiff states that Defendant Heard did not like Plaintiff and her conduct created a hostile learning environment. (*Id.*, PageID.79.)

Plaintiff states that in August of 2019, his report card, which showed he had received an "A" was given to another prisoner to pass along to him by Defendant Bosma. That prisoner looked at the grade and shared the information with other students, who began to call Plaintiff a "grade chaser." (*Id.*, PageID.80.)

Plaintiff states that he was threatened with two "advisement" letters dated December 1, 2019, and June 9, 2020, which characterized his written communications with educators as "behaviors" that could lead to "disciplinary action up to and including dismissal." (*Id.*, PageID.76.)

On September 14, 2020, Defendant Cioffi issued an expulsion letter to Plaintiff without providing any hearing, evidence, or notice of appeal. (*Id.*, PageID.77.) Plaintiff states that MDOC administrators then "forged" classification documents saying that he had been removed from CPI for "behavior" and was on "double OO" contrary to MDOC Policy Directive 05.01.100, which limits discretion and requires evaluations and "substantive predicates after a hearing." (*Id.*) Plaintiff claims that these actions were "encouraged, endorsed, and approved by State Agents," specifically Defendants Heard, Mates, Sutton, Gay, and Washington. (*Id.*)

Plaintiff filed two MDOC grievances that were rejected by the MDOC for lack of jurisdiction. (*Id.*) Plaintiff requested reconsideration and reinstatement by submitting a formal appeal. Plaintiff also wrote countless letters to the CPI office and to Calvin University officials for two and a half years. Plaintiff states that he did not receive a response. (*Id.*) Plaintiff asserts that the expulsion letter falsely characterized two prior advisements as "letters of discipline" even though the content of the letters does not support that conclusion. (*Id.*)

3

Plaintiff formally requested that his academic writings and notes, as well as his "Clay Jar Project" be returned. (*Id.*, PageID.78.) After being removed from the Calvin program, Plaintiff was transferred to a prison in Muskegon. In 2021, Plaintiff attempted to enroll at Hope College, which is Defendant Cioffi's alma mater. Plaintiff believes that Defendant Cioffi used his influence to prevent Plaintiff's acceptance as a student at Hope College. (*Id.*)

On November 1, 2022, Plaintiff filed a formal appeal to Defendant Gay and requested a full investigation. Plaintiff did not receive a response. On November 3, 2022, Plaintiff filed a second formal appeal to Defendant Avila at the Calvin University Office of Student Affairs, in which he formally requested documents and notified the Board of Trustees "of these violations." (*Id.*) On March 17, 2023, Plaintiff sent an email to Defendant Toly requesting a formal investigation, production of Plaintiff's documents and records, an actual appeal process, and "corrective" and "restorative" action. (*Id.*) Plaintiff did not receive a response. (*Id.*) Plaintiff was transferred to LCF on June 6, 2023. Plaintiff subsequently sent an "email letter" to the MDOC and to Calvin University officials regarding his concerns. (*Id.*)

Plaintiff has filed a supplement to his amended complaint which includes numerous exhibits, including letters from Defendant Cioffi to Plaintiff regarding concerns about his conduct. On December 17, 2019, Defendant Cioffi wrote a letter to Plaintiff, which contained the following statements:

> Mr. Phillip Brown,
>
> In recent weeks, I've become aware of circumstances which involve you that I have concerns about. This letter addresses these concerns and explains my expectations for your behavior in the future.
>
> You requested that Calvin volunteer Jack Roeda meet with your girlfriend on her upcoming visit to MTU. To be clear, you may not ask any Calvin faculty, staff, or volunteer to engage any concerns you have outside of the CPI program or in your life beyond the prison.

In addition, your 12/6/19 letter to Warden Burton and A.A. Mates suggests our collaboration with you on your proposed leadership conference. Though you submitted a proposal for this idea, I have not confirmed with you our interest in pursuing it as a CPI initiative. In fact, we do not wish to do so. Your letter to Burton and Mates is misleading. In the future, you may not approach MTU staff presenting your projects as though they are endorsed by the Calvin Prison Initiative.

Should behaviors like this continue, we will consider disciplinary action up to or including dismissal from the Calvin Prison Initiative.

(ECF No. 16-1, PageID.135.) On June 9, 2020, Defendant Cioffi wrote the following:

Phil,

I was disappointed recently to see that you had written your professors via the LRS system. It was my understanding that you would not contact your professors, or any other CPI volunteer, in this way. There was no need for you to send thank you letters. In fact, you were the only student to do so. It's not clear to me why this is not clear to you, given our conversations with Mr. Mates and Ms. Heard respectively.

It's also disconcerting that you wrote a letter to Ms. Bosma once you realized that the letters had not been forwarded to your professors. You made a case for your behavior, indicating that technically the semester wasn't over and that you were corresponding with current professors. However, your correspondence had nothing to do with active course work. Indeed, your letters were filled with profusive thanks, syrupy adoration, and the like, to an extent that is over the top and feels manipulative. Again, no other student does this. To make a case for why your letters are appropriate, indicates to me that you are determined to do what you want and justify your actions on your own terms. Whether or not you believe you were justified in writing the letters has nothing to do with the issue. You were told not to correspond about non-academic matters with professors or volunteers – period. I also found it odd that in two correspondences with Ms. Bosma, you state you don't want to discuss the matter. This kind of statement, coupled with the letters, strike me as an attempt to control the situation, which I think in part goes to the root of the problem. You seem to need quite a bit of control over your life and others, even though your current circumstances do not allow for such control. Put differently, you seem bent on getting your way.

At this point, given the situation we're in due to the pandemic, this letter will serve as – yet again – a warning to correct your behavior. I'm not sure why you seem incapable of following certain directives, but if you continue to disregard our directives, you will put yourself at risk of being removed from the program.

Professor Cioffi

(*Id.*, PageID.136.)

Finally, on September 14, 2020, Defendant Cioffi authored a letter to Plaintiff informing him that he had been dismissed from CPI. The letter stated:

Dear Phillip Brown #271566,

This letter is to inform you that you have been dismissed from the Calvin Prison Initiative. This decision is the result of a series of actions you've engaged in over the past several months.

On December 17, 2019, you received a letter of discipline from me. In the letter, you were directed not to have any improper contact with Calvin faculty, staff or volunteers. On June 9, 2020, you received another letter from me directing you to have no contact with your professors beyond what they ask for from you in class.

I was disappointed to learn that an assignment you turned in to Professor Rylaarsdam included an unsolicited note at the end in which you request that he provide you with information on his "education, passions, and relevant biographical information" so you could learn about his "perspectives, possible biases, worldview and ideas." Requesting personal information from a Calvin professor directly violates my repeated instructions to you.

As a result, in consultation with prison administrators and the CPI Committee, we have agreed that you are dismissed from the Calvin Prison Initiative. We wish you well in your future endeavors.

Sincerely,

Todd Cioffi
Director

(*Id.*, PageID.139.)

Plaintiff states that Defendants violated his rights under federal and state law. Specifically, Plaintiff asserts the following First Amendment claims: retaliation, infringement on the freedom of speech, thought, inquiry, expression, politics, religious belief, and association. Plaintiff also asserts violations of the Establishment Clause and the Free Exercise Clause of the First Amendment. Additionally, Plaintiff asserts that his Fourteenth Amendment equal protection rights and due process rights were violated, and that he was discriminated against because of his viewpoints. Further, Plaintiff asserts violations of 42 U.S.C. §§ 1985 and 1986.

6

With respect to Plaintiff's state law claims, Plaintiff asserts violations of Articles 1 and 8 of the Michigan Constitution, as well as claims of fraud and conspiracy, bad faith conduct, breach of contract, tortious interference, theft, unlawful keeping of property, and ethnic discrimination.

Plaintiff seeks compensatory damages for the loss of his scholarship and the loss of his pay, punitive damages, and declaratory relief.

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Color of State Law

Plaintiff names Calvin University employees Cioffi, Bosma, LeRoy, Boer, Toly, and Avila as Defendants, as well as CPI, Calvin University, and Unknown Parties #2 named as Calvin University Board of Trustees. Even if Plaintiff could show that these Defendants engaged in any wrongful conduct[1], Plaintiff must show that conduct violated his federal rights.

As set forth above, to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and *must show that the deprivation was committed by a person acting under color of state law*. *West*, 487 U.S. at 48; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street*, 102 F.3d at 814. In order for a private party's conduct

---

[1] The Court notes that it is apparent from the complaint and attachments thereto that Plaintiff was warned on two separate occasions that his continued participation in CPI was contingent upon his abstention from having inappropriate and unsolicited contact with Calvin faculty, staff, and volunteers. (ECF No. 16-1, PageID.135–136.) Plaintiff disregarded those warnings and submitted an unsolicited note to a professor despite the prior warnings. (*Id.*, PageID.139.) In the note, Plaintiff asked the professor to provide him with personal information regarding the professor's "education, passions, and relevant biographical information." (*Id.*) It is clear to the Court that despite his assertions of an underlying improper motive, Plaintiff was removed from CPI for his continued refusal to conform his behavior to the requirements communicated to him by Defendant Cioffi. Notwithstanding Plaintiff's attempts to characterize his conduct as "rigor for academics and intellectual conversation" (*id.*, PageID.167), it is clear that Plaintiff was given repeated warnings of the consequences of his behavior and simply chose to ignore those warnings.

to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally*, *Lugar*, 457 U.S. at 936–39 (discussing three tests).

Plaintiff has not presented any allegations by which the conduct of Defendants CPI, LLC, Calvin University, and Unknown Parties #2 named as Calvin University Board of Trustees, and their respective Defendant-employees could be fairly attributed to the State. Plaintiff has filed a motion for an evidentiary hearing to address this issue in which he makes conclusory assertions that his amended complaint establishes sufficient support to find that "the Defendants close relationship, actual joint participation, overt collaboration, and coercive use of the State's power is apparent." (ECF No. 15, PageID.116.) However, Plaintiff's assertion that these Defendants were

acting under color of state law is entirely conclusory. The services provided by CPI and Calvin University in this case, a college scholarship and higher education for a select few prisoners, is not a service that is traditionally provided by the State. Nor is it a joint activity or subject to the State's coercive power. Accordingly, Plaintiff fails to state a § 1983 claim against Defendants Cioffi, Bosma, LeRoy, Boer, Toly, Avila, CPI, Calvin University, and Unknown Parties #2 named as Calvin University Board of Trustees.

Moreover, even if Plaintiff could sue these Defendants under § 1983, for the same reasons set forth below, he would fail to state a claim against them. *See infra* Section II.B.2.

### B.      MDOC Defendants

As explained below, Defendants Washington, Gay, Sutton, Heard, Mates, Ripley, and Unknown Parties #1 are likewise entitled to dismissal from this action.

#### 1.      Defendants Mates, Sutton, Gay, and Washington

Plaintiff claims that the actions of CPI and Calvin University Defendants were "encouraged, endorsed, and approved by State Agents," specifically Defendants Mates, Sutton, Gay, and Washington, and that he did not receive a response to his appeal and request for investigation from Defendant Gay. (ECF No. 12, PageID.77–78.) However, besides these conclusory allegations, Plaintiff fails to allege any specific facts regarding the conduct of these individuals.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how

any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x

762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any

degree of specificity which of the named defendants were personally involved in or responsible

for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2

(6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant);

*Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims

against those individuals are without a basis in law as the complaint is totally devoid of allegations

as to them which would suggest their involvement in the events leading to his injuries"). Because

Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring

"a short and plain statement of the claim showing that the pleader is entitled to relief"), he fails to

state a claim against Defendants Mates, Sutton, Gay, and Washington.

Moreover, to the extent that Plaintiff intended to hold these Defendants liable due to their

supervisory positions, government officials, such as these Defendants, may not be held liable for

the unconstitutional conduct of their subordinates under a theory of respondeat superior or

vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978);

*Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be

based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir.

2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not

enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d

at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover,

§ 1983 liability may not be imposed simply because a supervisor denied an administrative

grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*,

199 F.3d 295, 300 (6th Cir. 1999). Therefore, to the extent that Plaintiff seeks to hold these

Defendants liable simply due to their supervisory positions, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state any claim upon which relief may be granted against Defendants Mates, Sutton, Gay, and Washington.

### 2.    Defendants Ripley, Heard, and Unknown Parties #1

With respect to Defendants Ripley and Unknown Parties #1, Plaintiff claims that Unknown Parties #1 collaborated with Defendant Cioffi, and that Defendant Ripley forged classification documents stating that Plaintiff had been removed from CPI for behavior. Further, Plaintiff claims that Defendant Heard routinely entered educational spaces during studies and made threatening comments, often in front of Defendant Cioffi and other students, and that Defendant Heard did not like Plaintiff and her conduct created a hostile learning environment.

Initially, the Court notes that Plaintiff's claims against Defendants are conclusory and are largely unsupported by specific factual allegations. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Setting this issue aside, the Court will address each of Plaintiff's claims below.

### a.    Due process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."[2] *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

---

[2] Plaintiff states that his due process rights under the Fifth Amendment were violated; however, the Fifth Amendment applies only to claims against federal employees. In this action, the remaining Defendants are employees of the MDOC. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the action in question "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Here, Plaintiff does not allege that his removal from CPI affected the duration of his sentence, and, as explained below, he has not shown that it imposes an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87.

As relevant to Plaintiff's claims, federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9

restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

(1976) (holding that the Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, despite Plaintiff's assertions otherwise, the loss of privileges, opportunity, and wages associated with his CPI enrollment did not trigger a right to due process. Without such a protectible interest, Plaintiff cannot successfully claim he has been denied due process, because "process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Further, courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Nor does Plaintiff's placement on "double OO" status implicate Plaintiff's due process rights. As discussed above, according to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a

14

deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

"Double 00" is often used to describe prisoners who are classified to unemployable status. *See, e.g.*, *Lewis v. Stoddard*, No. 1:17-cv-100, 2017 WL 942156, at *3 n.2 (W.D. Mich. Mar. 10, 2017). Pursuant to the MDOC's policy regarding unemployable status, "[p]risoners classified to unemployable status shall be afforded two hours per day of indoor or outdoor recreation (i.e., yard) . . . but shall not be permitted to participate in any other leisure time activities." MDOC Policy Directive 05.01.100 ¶ CC (eff. July 17, 2023).[3] Further, "[p]risoners classified to unemployable status shall be permitted to attend primary religious services and approved holy day observances but shall not be permitted to attend other religious activities." (*Id.*) The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245.; *Moody*, 429 U.S. at 88 n.9; *Meachum*, 427 U.S. at 228–29. Prisoners cannot "have a protected liberty interest in the procedure[s] affecting [their] classification and security, because the resulting restraint, without more, [does] not impose and 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Cash v. Reno*, No. 97-5220 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997); *see also Morris v. Metrish*, No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998); *Moore v. Sally*, No. 97-4384, 1999 WL 96725, at *1 (6th Cir. Feb. 3, 1999). Plaintiff also does not have a liberty or property interest in prison employment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that district court properly dismissed as

---

[3] The Court cites to the specific paragraph in the MDOC's policy directive that became effective on July 17, 2023, because that is the version that is currently publicly available.

frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d

371, 374 (6th Cir. 1989) (discussing that there is no constitutional right to prison employment).

And, federal courts consistently have found that prisoners have no constitutionally protected

liberty interest in prison vocational, rehabilitation, and educational programs or activities under

the Fourteenth Amendment. *See, e.g.*, *Moody*, 429 U.S. at 88 n.9; *Argue*, 80 F. App'x at 429

(finding that prisoners have no constitutional right to rehabilitation, education or jobs). Moreover,

in prior cases, the Sixth Circuit and this Court have concluded that a prisoner's placement on

"double OO" status (i.e., unemployable status and room restriction) does not implicate the

prisoner's right to due process. *See, e.g.*, *Ingram v. Harry*, 97 F. App'x 20, 21 (6th Cir. 2004);

*Robinson v. Grover*, No. 2:21-cv-99, 2022 WL 969678, at *7 (W.D. Mich. Mar. 31, 2022); *Smith

v. Heyns*, No. 1:13-cv-694, 2013 WL 5636620, at *12–13 (W.D. Mich. Oct. 16, 2013); *Davis v.

Berghuis*, No. 1:12-cv-258, 2012 WL 3116360, at *7 (W.D. Mich. July 31, 2012).

Further, to the extent that Plaintiff alleges that he was deprived of property without due

process of law (*see, e.g.*, ECF No. 1, PageID.8), this claim is barred by the doctrine of *Parratt v.

Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under

*Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee

cannot maintain a federal due process claim unless the state fails to afford an adequate post-

deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is

not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional

deprivations of property, as long as the deprivation was not pursuant to an established state

procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove

the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–

80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted

that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, for all of the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### b.   First Amendment claims

In addition to asserting that his due process rights were violated, Plaintiff attempts to state the following First Amendment claims: retaliation, infringement on the freedom of speech, thought, inquiry, expression, politics, religious belief, and association, and infringement on his right to the free exercise of religion. Additionally, Plaintiff claims that Defendants' conduct constituted a violation of the Establishment Clause.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

17

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Here, Plaintiff's First Amendment retaliation claim fails at the first step. Plaintiff alleges that Defendants retaliated against him for exercising his rights of free speech and academic freedom. However, in a prison setting, not all speech is protected conduct, and what constitutes protected conduct in a prison setting differs from what speech is protected in a non-prison setting. *See Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979). "[I]t is generally much harder for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (citing *Turner v. Safley*, 482 U.S. 78 (1987)); *see Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in "protected conduct," and cannot proceed beyond step one." *Id.*

Plaintiff claims that his written communications and statements that he made in the CPI constituted protected conduct. In the prison context, it is not at all clear that communications and statements made during a prisoner's academic class would constitute protected conduct. Regardless, in this action, Plaintiff's communications and statements violated CPI's policies. Plaintiff had been previously warned to refrain from improper communications with CPI staff and advised of the consequences if he continued to have such improper communications. Under these

circumstances, Plaintiff's communications and statements are not protected conduct because they violated CPI's policies, and in the prison context, this is analogous to violating prison policies. *See Thaddeus-X*, 175 F.3d at 395.

Moreover, even if Plaintiff alleged that he engaged in protected conduct, his allegations would still be insufficient. Plaintiff merely alleges the ultimate fact of retaliation in this action, but he fails to allege sufficient factual allegations to support his claim. "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment retaliation claims will be dismissed.

With respect to Plaintiff's claims regarding the asserted infringement on his freedom of speech, thought, inquiry, expression, politics, religious belief, and association, Plaintiff fails to allege any *facts* showing that these rights were infringed. *Cf. Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("[F]reedom of association is among the rights least compatible with incarceration."); *Bell*, 441 U.S. at 545–46 (discussing that prisoners do not retain all of the same constitutional rights, including First Amendment rights, as non-prisoners). That is, although Plaintiff alleges in

a conclusory manner that these rights were violated, he fails to allege sufficient facts to support his conclusory assertions. Therefore, these claims are properly dismissed as conclusory. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

The same is true for Plaintiff's free exercise claim. To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials"). In this case, Plaintiff fails to allege facts showing that his ability to practice his religious beliefs was infringed on in any way. Therefore, this claim is properly dismissed as conclusory. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

As to Plaintiff's Establishment Clause claim, "the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman,* 505 U.S. 577, 587 (1992). Plaintiff fails to allege facts showing that he or any other individual was coerced into supporting or participating in a specific religion or its exercise. Therefore, this claim is properly dismissed as conclusory. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### c.    Equal protection

Plaintiff asserts that his Fourteenth Amendment right to equal protection was violated and that he was discriminated against because of his viewpoints. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473

U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Therefore, for these reasons, Plaintiff fails to state an equal protection claim.

### d.    Claims under 42 U.S.C. §§ 1985 and 1986

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[4] a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the

---

[4] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due

purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of

the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or

property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v.*

*Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d

837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Plaintiff fails

to allege any specific facts that would support any of the elements of a § 1985 conspiracy claim.

Therefore, Plaintiff's claim under § 1985 must be dismissed.

   Plaintiff's claim under § 1986 fails for the same reason as his § 1985 claim. Section 1986

provides as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done,
> and mentioned in section 1985 of this title, are about to be committed, and having
> power to prevent or aid in preventing the commission of the same, neglects or
> refuses to do so, if such wrongful act be committed, shall be liable to the party
> injured . . . for all damages caused by such wrongful act, which such person with
> reasonable diligence could have prevented . . . .

42 U.S.C. § 1986. The cause of action under § 1986, by its terms, is premised on the violation of

§ 1985. Because Plaintiff fails to state a claim under § 1985, his claim under § 1986 fails as well.

*See Bartell*, 215 F.3d at 560 (explaining that § 1986 is derivative and conditioned on establishing

a § 1985 violation); *Browder*, 630 F.2d at 1154 (same).

**III.**  **State law claims**

   Plaintiff suggests that Defendants violated state law and MDOC policy. Claims under

§ 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the

United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not

provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995);

---

process in state courts with the intent to deprive persons of their equal protection rights." *Fox v.*
*Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

*Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law or MDOC policy therefore fail to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

IV.     **Pending motions**

Plaintiff has filed motions to compel, for a preliminary injunction, to serve the complaint, for discovery, for declaratory judgment, and for an evidentiary hearing. (ECF Nos. 3, 9, 10, 11, 13, and 15.) Because Plaintiff's complaint fails to state a claim, his motions for a preliminary injunction, to serve the complaint, for discovery, for declaratory judgment, and for an evidentiary hearing are properly denied as moot.

With respect to Plaintiff's motion to appoint counsel (ECF No. 8), the Court notes that indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 8) will therefore be denied.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be

dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   January 2, 2024                         /s/ Jane M. Beckering
                                                  Jane M. Beckering
                                                  United States District Judge

25