FILED - GR
January 22, 2024 2:29 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: /KB /1/22

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
SOUTHERN DIVISION

Phillip A. Brown II,
    Plaintiff,

v.

Dr. Todd Cioffi et al,
    Defendants.

District Court :   23-cv-00987

Honorable :   Phillip J. Green

_____/

Phillip A. Brown II - #271566
In Rem Versum
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

Todd Cioffi - CPI Director
Calvin Prison Initiative
Calvin University
1855 Knollcrest Cir. SE
Grand Rapids, Mich. 49546
(616) 526-7998

_____/

## MOTION TO AMEND / RELIEF FROM JUDGMENT
Fed. R. Civ. Proc. #59 (e); #60 (b)(1)&(2)

Now comes Plaintiff, Phillip A. Brown II, and moves this Court to GRANT an ORDER to now VACATE, AMEND, and STAY the final order (1/2/24) (ECF #19) which dismissed for failure to state a claim and denied State actor status.

Mr. Brown contends that this Court clearly erred as a matter of fact and law under <u>Brentwood Academy</u> v. <u>Tennessee</u>, 531 U.S. 288, 298 (2001). (Holding that actual entwinement supports finding a State actor status.) See also <u>Brown</u> v. <u>Strickler</u>, 422 F.2d 1001, 1002 (6th Cir. 1970) which held a college that receives "financial support" from government and performs a public function "is sufficiently linked with the State." (See <u>New</u> Exhibit)

This Court also failed to recognize the specific facts which form the basis of his Complaint and did not address critical preliminary motions[2]. We ask the Court to REVERSE, STAY, APPOINT COUNSEL, and hold a hearing.

---

Note[2] - See Motion for Evidentiary Hearing to Show State Actor Status (ECF #15); Motion for Discovery (ECF #11); Motion for Declaratory Judgment (ECF #13); and Motion for Preliminary Injunction (ECF #9).

TABLE OF CONTENTS

Introduction ........................................................................... 3

Background ............................................................................. 4

Cause of Action ....................................................................... 5

    1. 1st Amendment Retaliation for Protected Conduct
        A. Jodi Heard's Harrasment / Threats of Expulsion
        B. Pastoral Question & Letter to Warden / AA Mates
        C. Thank You Letters To Professors (Spring 2020)
        D. Acadmic Question To Prof. Rylaarsdam (Fall 2020)
    2. Procedural Due Process
    3. Substantive Due Process
    4. 1st Amendment Violations
        A. Right to Freedom of Speech in Academia
        B. Right to Freedom of Thought
        C. Right to Freedom of Inquiry
        D. Right to Freedom of Expression
        E. Right to Freedom of Politics
        F. Right to Freedom of Religion / Belief
        G. Right to Freedom of Association
        H. Establishment Clause
        I. Free Exercise Clause
    5. Viewpoint Discrimination
    6. Equal Protection
    7. Violations of 42 USC §1985 (3)
    8. Violations of 42 USC §1986
    9. Fraud and Conspiracy / Bad Faith
    10. Breach of Contract / Tortious Interference
    11. Theft / Unlawful Keeping of Property
    12. Michigan Const. 1963, Art. 1, §5 (Speech/Writing/Expression)
    13. Michigan Const. 1963, Art. 8, §1 (Encouragement of Education)
    14. Ethnic Discrimination

Basic Argument / Legal Authority ............................................ 6

Extended Discussion ................................................................ 8

Claims of Error ...................................................................... 13

Conclusion ............................................................................. 15

Relief Requested .................................................................... 16

Certificate of Institutional Mail Filing ..................................... 16

INTRODUCTION

When Phil Brown received a merits scholarship to Calvin University, he established entitlement to earn his Bachelor's Degree in Faith & Community Leadership. In fact, he signed agreements and was issued a student number. In one year, he performed well with a 3.86 GPA and earned all 25 credits.

Unfortunately, he was retaliated against for political and protected conduct and finally expelled by CPI Dir. Todd Cioffi and State officials. These threats of reprisal to free speech and his expulsion were executed using coercive State power and Calvin University without any due process. These actions were tortuous, fraudulent, misleading, and unconstitutional which caused actual injury to Mr. Brown's person, finances, reputation, abilty to earn his degree, worship, and study in a faith based community. The facts will show Constitutional interest and coercive use of State power.

BASIC ARGUMENT

The expulsion by Dr. Cioffi, with Calvin University and MDOC officals, was executed without the due process requirements of notice, opportunity, and a meaningful hearing before Brown's free speech rights were violated. This contradicted State Law (AR 791.3310), MDOC Policy, and Calvin Policy. This also violated fundamental rights of the Constitution and due process.

In the college context, students "facing long term exclusion from the educational process" must be afforded their fundamental due process rights. Doe v. Univ. of Cincinnati, 872 F.3d 393, 396, 399 (6th Cir. 2017) (Holding that the Goss standard applies requiring an actual hearing and evidence.) A school's departure from their own rules violates due process. Id. at 404-07

The Defendants violated established federal law AND their own Policy as it relates to any form of disciplinary charges and extreme sanctions. College students with a scholarship have a protectible property interest.

3

## BACKGROUND

This case is about free speech, expression, academic rights, and due process in college academia. The Defendants, Dr. Todd Cioffi et al, acted in joint participation with, were encouraged by, and used coercive State power to expel Mr. Brown from his Calvin scholarship as retaliation for speech.

In Fall 2019, Defendants began to harrass, intimidate, bully and censor Mr. Brown with active censorship and actual threats. Cioffi, Heard, & Mates actively targetted Mr. Brown for his political, philosophical, associations, viewpoints, and written communications. These were all protected conduct. Despite being an all A's student with no alleged MDOC or CPI misconduct, he was expelled for asking an improper question in an "unsolicited note."

When Brown tried to appeal to MDOC and Calvin University Officials, both denied jurisdiction, resisted, refused access, and stonewalled him. The State Courts also denied him an adequate post-deprivation remedy[2].

Mr. Brown's Complaint (ECF #12) contends with facts (¶A-V and ¶1-103) and Exhibits (ECF #16) that sufficiently support his detailed allegation. To wit: Dr. Cioffi et al violated his fundamental rights, retaliated, and denied him due process when they wrongfully expelled him from his Calvin University scholarship without any notice, evidence, hearing, or appeal.

---

Note [2] - Since August 2023, Mr. Brown has unsuccessfully attempted to file a signed Complaint with Demand for Jury Trial and Motion to Waive Filing Fees (w/MDOC Trust Account Affidavit) in the Ionia County 8th Circuit Court at least three times (August, September, October) who repeatedly REFUSED to file the Complaint and assign a case number. (See Attached Exhibits)
This is contrary to the mandatory language in Michigan Court Rule 2.002 (D) "If a party shows by ex parte affidavit or otherwise that he or she is unable because of indigency to pay fees and costs, the court shall order those fees and costs either waived or suspended until the conclusion of the litigation."; MCR 2.101 (B) ("A civil action is commenced by filing a complaint with the Court."); MCR 2.102 (A) ("On the filing of the complaint, the court clerk shall issue a summons to be served...")
The Clerk's office repeatedly refused to do this and invented reasons to return the Complaint without filing. There is no adequate State remedy.

## CAUSES OF ACTION

1. 1st Amendment Retaliation for Protected Conduct
    A. Jodi Heard's Harrasment / Threats of Expulsion
    B. Pastoral Question & Letter to Warden / AA Mates
    C. Thank You Letters To Professors (Spring 2020)
    D. Acadmic Question To Prof. Rylaarsdam (Fall 2020)
2. Procedural Due Process
3. Substantive Due Process
4. 1st Amendment Violations
    A. Right to Freedom of Speech in Academia
    B. Right to Freedom of Thought
    C. Right to Freedom of Inquiry
    D. Right to Freedom of Expression
    E. Right to Freedom of Politics
    F. Right to Freedom of Religion / Belief
    G. Right to Freedom of Association
    H. Establishment Clause
    I. Free Exercise Clause
5. Viewpoint Discrimination
6. Equal Protection
7. Violations of 42 USC §1985 (3)
8. Violations of 42 USC §1986
9. Fraud and Conspiracy / Bad Faith
10. Breach of Contract / Tortious Interference
11. Theft / Unlawful Keeping of Property
12. Michigan Const. 1963, Art. 1, §5 (Speech/Writing/Expression)
13. Michigan Const. 1963, Art. 8, §1 (Encouragement of Education)
14. Ethnic Discrimination

## BASIC ARGUMENT

Mr. Brown contends he can show (with a hearing) State actor status on each Defendant under all three (3) tests. The CPI program accepts federal funding (See attached exhibit), performs an important educational function exclusively inside a State prison, performs supervisory and custodial tasks over prisoners with State authority, participates in disciplinary actions with State government, and State agent Jodi Heard did here provide an overt support and coercion for the specific actions challenged in this complaint. These are issues of fact for a jury. The MDOC and Calvin built an additional building with joint funding on State property. The list goes on an on here. The day to day operations are interwoven with the State. Most importantly, as shown by Cioffi's letter, this expulsion decision was mixed with State authority. This Court cannot deny State actor status for under these facts.

## LEGAL AUTHORITY

The Supreme Court has issued several important decisions on whether a private entity working with the State can be considered as a State actor.

In West v. Atkins, 487 U.S. 42, 47-49 (1988) the Court held that a part time physician working with the State to provide medical care to prisoners was acting under "color of state law." Id. See also Lugar v. Edmonson Oil Co., 457 U.S. 922, 936 (1982) (Where a rule is imposed by a person for whom the State is responsible.); Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (Identifying the Nexus Test, Compulsion Text, and Functionality Test.)

In Blum, the Court's analysis focused on whether these decisions were made exclusively by private providers based on "medical judgments" totally unrelated to the State. Id. at 1008. This inquiry focused on whether the "functions or obligations" were mixed with State authorities.

The Circuits have spoken clearly with crucial decisions on the issue. In Brown v. Strickler, 422 F.2d 1001, 1002 (6th Cir. 1970) the Court held that "An institution such as this, serving an important public function and financed by public funds is sufficiently linked with the State..." Id. This holding is binding for colleges accepting federal funding and educating or holding classes for State citizens. That is, educating in public spaces. This proper application of the functional test is binding upon this Court.

On the issue of public function, the Supreme Court clearly stated in Brown v. Board of Education, 347 U.S. 483, 493 (1954):

> "Today, education is the most important function of State and local governments..."

The Sixth Circuit has explicitly held and recognized that "the provision of education, police protection, and prisons are public functions that, when privatized, still retain their public nature, and action under color of law may still be found." See Nugent v. Spectrum Services, 72 F.4th 135, 141-42 (6th Cir. 2023) (Holding that operating prisons and education are generally considered State functions "traditionally reserved to the State."); see also Borrell v. Bloomsburg Univ., 63 F.Supp.3d 418, 434-36 (M.D. Penn. 2014) (Holding dismissal from college education program without due process was fairly attributable to the State where private entity collaborated for "academic education" and willfully participated in joint activity.)

These decisions demonstrate that this Court's judgment is predicated on material error of fact and law by failing to consider the relevant holdings. We ask this Court to apply Brown's holding to the full body of facts because CPI and Dr. Cioffi receive "substantial financial support" and conduct their entire Calvin college program on the Handlon campus inside the MTU Prison. Further, hold the instant dismissal without an evidentiary hearing is error.

## EXTENDED DISCUSSION

Since 2015' there have been over 35 students, professors, and staff expelled from Calvin's CPI college scholarship program without due process. In some cases (like this), Dr. Cioffi, CPI, and the MDOC acted together in direct violation of MDOC and Calvin University Policy that caused injury. Most disturbing is the total lack of respect for clarity in the CPI rules and targetting of students who are deemed politically undesirable.

CPI and MDOC actively use coercive State power to create and enforce a quid pro quo for their MDOC student collaborators. CPI's core programming is strongly progressive with a major focus on anti-conservativism and even anti-white sentiments within socialist, stassi, and marxist doctrines advanced under the guise of religion and deep state righteousness. Like all quid pro quo government perks, there are some unwritten rules. In reality, the program (since it's inception) has been grooming power hungry snitches.

Dr. Cioffi uses political power thru his heavily financed business relationship inside MTU prison and MDOC. See Kyle Kaminski (Calvin Alumni) (MDOC Legislative Liason) (Offender Success Dir.); Heather Gay (Education Manager); and Heidi Washington (MDOC Director). These key relationships have required that CPI be approved by the MDOC to engage in both <u>custodial</u> and <u>supervisory</u> functions while educating State prisoners behind the walls.

The relationships started around 2015 when Calvin alumni Daniel Heyns was appointed as MDOC Director by then Governor Rick Snyder. About this time, President Obama launched a pilot program with federal funding for State prisoners to explore the re-introduction of college for prisoners. CPI was then formed as an LLC in Michigan which would serve as the medium to do business with the Federal Government, the State, and Calvin University. Federal law changed permanently making Pell grants available for prisoners.

CPI moves and acts with State (MDOC) authority that extends beyond the classroom. Prisoners are subject to supervisory and custodial monitoring by CPI staff and their own classmates. Cioffi instructs to "police" others in school and asserts custodial authority over them in person and secretly. This extends beyond class. The CPI "program" can be whatever it wants to be. Dr. Cioffi's status, position, influence, and joint daily meetins with his staff at MTU renders him a State actor (along with Kary Bosma) and all CPI.

The scholarship (which no longer exists) was generally used as leverage for political indoctrination along with CPI prisoners who worship Cioffi. Some prisoners do false snitching to curry favor and eliminate competition. Much of this is advanced under the guise of protecting the CPI program. The coercive power and influence that Dr. Cioffi uses is directly aligned with the State in Lansing and MTU through MDOC agents like the MTU Warden, Dep. Warden, and Jodi Heard who was the political enforcer. Countless examples have been made using expulsion for anyone who disagrees with Cioffi, or whom heard does not like. The CPI Director represents the bridge between two powerful orgranizations (MDOC and Calvin University).

If the Complaint is true, Dr. Cioffi, CPI, Calvin University, and several active agents of the MDOC have gaslighted him and revoked his academic scholarship to Calvin University without any form of due process. These facts, and the events leading up to this event show clear retaliation, taking of property, and substantive due process violations with exupulsion. These facts are spelled out in detial with the State's singular objective. However, the veracity and core facts supporting causastion and protected conduct are ultimately questions of fact for the jury to decide at trial. This Court erred by denying the presumption of truth and used Cioffi's own false narrative to totally deny Brown's protected academic conduct.

9

Cioffi wrongly concluded that Brown wrote an "unsolicited note" that requested "personal information" which allegedly violated <u>his</u> "repeated instructions." In fact, Dr. Cioffi did not allege a CPI code violation or an MDOC misconduct. In fact, Brown's question was germane to the class and was stated "in the context of this class." This full context was ignored. In fact, Brown was never instructed to refrain from asking a specific question.

Brown was expelled despite the fact that his new Professor, Dr. Rylaarsdam, clearly instructed students on 9/3/20 to submit questions via the LRS. Mr. Brown asked specifically about his curriculum vitae, life experiences, worldview, and his possible biases for teaching to understand the audience for his papers. Thus, the question was not improper. These facts are contested and Mr. Brown contends he did nothing wrong. Further, that he was entitled to fact finding hearing, evidence, and appeal according to both Calvin University and MDOC Policy. However, <u>Defendants refuse to produce the evidence</u>.

Since the expulsion, Calvin and MDOC agents have repeatedly refused to provide the documents, any evidence that Mr. Brown did anything wrong here, or adequate process. No evidence, hearing, or appeal was ever provided. University officials, the MDOC, and CPI have simply stonewalled Mr. Brown. These actions are retaliatory and have stifled his right to access Court.

Mr. Brown has clearly alleged that Dr. Cioffi et al have violated Calvin University policy, MDOC policy, and his clearly established federal rights by these actions without any form of due process. Further, that Dr. Cioffi's characterization of Mr. Brown's written words, speech, and expression is subjectively false, misleading, and part of a larger plan, scheme, and conspiracy to retaliate and unconstitutionally expel (injure) him by framing a false narrative that he does not follow the instructions. These are questions of fact for a jury to decide, not a federal judge.

Dr. Cioffi et al have gaslighted the facts to form a misleading narrative with two prior "advisement" letters that were also crafted without notice, hearing, or due process. These "advisement" letters were later falsely labeled as disciplinary for basic coercion to give the false impression of improper actions by Brown. These actions are fraudulent, misleading, and oppressive to Mr. Brown's right to make rhetorical choices, taylor speech, academic inquiry, and engage the educational process under modern normative standards. They also violote his core christian beliefs.

Neither Dr. Cioffi, CPI, the State, nor Calvin has provided any procedural or substantive post-deprivation remedy after being repeatedly requested for over 2½ years. There is no adequate remedy available to Brown. Furthermore, neither party will produce the written document (electronic or otherwise) that is required to seek relief in State Court on these claims.

This written document allegedly triggered the expulsion action by Dr. Cioffi and State authorities using coercive power of the MDOC, with actual encouragement by MDOC agents (Heard, Mates, Sutton, Gay, & Washington). There exists a close relationship and nexus between Dr. Cioffi, CPI, the MDOC, and all the Defendants. This is not speculative or conjectural.

The expulsion letter itself proves sufficient facts as legal evidence to establish the need for an evidentiary hearing on State actor status:

> "As a result, in consulation with prison administrators and the CPI committee, we have agreed that you are dismissed from the Calvin Prison Initiative."
>
> (9/14/20 Expulsion Letter - Signed by Dr. Cioffi)

This expulsion without any notice, evidence, hearing, or appeal is preposterous. Brown was NEVER even alleged or charged with violating any alleged MDOC or CPI rule. FACT. This is a fact. Instead, Dr. Cioffi alleged Brown failed to follow his "instructions," and personal expectations.

11

Dr. Cioffi was simply _not_ the professor and Dr. Rylaarsdam explicitly told Brown in the first instructional video and message to submit any questions digitally through the LRS with the Student Profile Questionairre.

When Brown asked a relevant question germane to the ethos of his new professor for whom he would be writing papers, then CPI agents and Dr. Cioffi intercepted it, censored it, and erroneously deemed the question improper to achieve his single conspiratorial goal[3] of injuring Mr. Brown by revoking his scholarship, excommunicating him, and humiliating him.

Mr. Brown contends these actions, along with a pattern of harassment by Cioffi and other State agents, stifled his free speech, expression, and other acadmic rights when they ultimately retaliated against him when they expelled him without any required due process. Brown asserts this unified, single, and objective goal was intended to injure and oppress him by taking his property (Scholarship, Notes, Assignments, & Wage) and liberty right along with co-conspirators Jodi Heard, Mathew Mates, and other "unnamed" MDOC prison administrators he references in his expulsion letter.

Mr. Brown contends that Sutton, Heard, Mates, Gay, and Washington are these "unnamed" administrators and members of the CPI committee who explicitly "approved, encouraged, and approved" this improper expulsion. This is a question of fact for the jury, not this Court. These Defendants had direct knowledge of this expulsion action and presumptively authorized State action according to mandatory Policy and custom existing at that time. In fact, no CPI student is expelled or removed without the express approval of these parties. This action requires authorization by CFA Admin. Education Manager Heather Gay and Director Heidi Washington.

---

NOTE[3] - Dr. Cioffi publicly acknowledged his conspiratorial goal on 12/17/19 in front of MDOC staff Mates and the CPI body when he referenced Brown and said "We're going to put somebody on the bus and ship them out of here!" He then directly walked over to Brown and ordered him to an isolated room where Mates and Cioffi berated him with false allegations. He was directly threatened during this confrontation. (See Complaint, ¶35-39).

## CLAIMS OF ERROR

In addition to wrongly deciding the State actor question, this Court made the following mistakes concerning these factual and legal errors:

#1 This Court erred by finding a failure to allege specific facts concerning Mates, Sutton, Gay, & Washington. (ID 246) The facts alleged in the Complaint (ECF #12; ¶A-V and ¶1-103) assert a knowing approval contrary to Policy. This shows more than sufficient notice of the claim here. Wherefore, Brown clearly contended that these Defendants each "encouraged, endorsed, and approved" the unlawful actions against him by Dr. Cioffi, CPI, and the other co-conspirators that violated Calvin University Policy, MDOC Policy, and Mr. Brown's basic rights in this academic context and situation. Mr. Brown could not have been expelled without approval from these parties.

#2 This Court erred by finding the claims against Heard, Ripley, and unknown parties "conclusory" and also "unsupported by factual allegations." (ID 248) The specific facts and details are made in the Complaint. (ECF #12)

#3 DUE PROCESS ANALYSIS (ID 248-253)

The Court's analysis ignores clear cut arguments showing the sources of property and liberty interest in this case. (See Complaint (ECF #12); Sources of Protected Constitutional Interest (p. 7)) The Court overlooked Roth v. Bd. of Regents, 408 U.S. 464, 571-72 (1972) and it's core holding. Under Roth, Mr. Brown can establish interest for liberty and property from at least (3) sources under the particular facts of this academic situation. The Court erred by ignoring the Roth holding and particular facts alleged.

Concurrently, Mr. Brown did allege the inadequacy of post-deprivation remedies by the State as being unavailable in both instances. (See Exhibits) Consequently, there is no adequate or available State Court remedy for him and the Court of Claims does not afford the right to a jury trial.

#4 FIRST AMENDMENT CLAIMS (ID 253-256)

This Court erred by failing to acknowledge Mr. Brown's free speech, expression, and other 1st Amend. rights not inconsistent with legitimate penological interests as being clearly established in this case. This contradicts settled law. See Spruytte v. Walters, 181 F.Supp.2d 736, 742 (W.D. Mich. 2001) (Holding that prisoners retain their 1st Am. rights.) The State, CPI, Calvin University, Cioffi, or this Court has pointed to no legitimate rule or policy in this instance. There is none. Furthermore, the facts supporting these claims were not conclusory.

This Court failed to identify the Court's clear holdings protecting the right to free speech for college students on campus and otherwise. See Sweezy v. N.H., 354 U.S. 234, 249-50 (1957); Healy v. James, 408 U.S. 169, 171-83 (1972); BL v. Mahoney, 964 F.3d 170, 177 (3rd Cir. 2019).

#5 EQUAL PROTECTION (ID 256-257)

The basis of this claim is simple, Mr. Brown was treated differently than other Calvin University students who, accordig to the Policy and procedures set forth mandate freedom of speech and expression, due process, and a fact finding hearing with evidence and a right to be heard and appeal. CPI, Dr. Cioffi, and Calvin University did not provide these to him. All Calvin University Officials and parties are liable since they were notified.

#6 CONSPIRACY UNDER 42 USC §1985(3) & §1986

Mr. Brown notified all relevant parties at Calvin University of the gross deviation from the school's procedure, and the clear conspiracy to dismiss him without even an allegation of a code violation or MDOC misconduct. Upon these facts, they ignored him, affirmed the unlawful acts, and actively participated by neglecting their own sworn duty.

CONCLUSION

Wherefore, the Plaintiff respectfully requests that this Court now VACATE it's 1/2/24 Opinion which is predicated on material error of fact, an insufficient record, and controlling law in <u>Brentwood</u>, 531 U.S. at 295, 298, 303 where all named Defendants are fully entwined with the MDOC and a complete record (hearing) is necessary for this "fact bound inquiry."

The holding in <u>Brown</u>, 422 F.2d at 1001 also applies since CPI receives federal funding. There exists overwhelming evidence that Defendants are extensively entwined with the MDOC, perform traditional State functions, were using coercive power, and have a close relationship with the State. Unquestionably, it takes a State agent to get a prisoner in this college education program and a State agent to enforce their involuntary removal. These facts cannot be debated, nor the fact that this education program exists behind the walls of a public prison with active agency by the MDOC.

Finally, and perhaps the most compelling evidence to support this Court's probable cause finding of State actor status, is Dr. Cioffi's own words that were explicitly stated in the 9/14/20 expulsion letter:

> "As a result, <u>in consultation with prison administrators and the CPI committee, we have agreed that you are dismissed</u> from the Calvin Prison Initiative."
>
> (9/14/20 Expulsion Letter - Signed by Dr. Cioffi)

Consequently, neither this Court, nor God, can deny that State Agents were actively involved in the challenged decision, influenced this result, participated jointly in this alleged disciplinary removal, and totally failed to follow either Calvin University or MDOC Policy that were both controlling at the time of this unlawful scholarship revocation.

## RELIEF REQUESTED

For these reasons, we ask that this Court GRANT relief and VACATE it's dismissal order, REINSTATE the action, GRANT a STAY, ORDER discovery, and in it's good discretion, APPOINT COUNSEL to conduct an evidentiary, whereafter Plaintiff may then AMEND his complaint for consideration on a full record.

*Phillip A. Brown II*
1-17-24

## CERTIFICATE OF INSTITUTIONAL MAIL FILING

The undersigned, being first duly sworn, does hereby attest that this Motion to Amend / Relief from Judgment; Motion to Recuse; Motion to Stay; and Bill of Particulars were given to prison officials for processing by using the expedited legal mail system and authorized for mailing with first class postage fully prepaid thereon January 17th 2024.

*Phillip A. Brown II*
1-17-24



RK OF THE COURT

DISTRICT COURT

MICHIGAN AVE.

ND RAPIDS, MICH. 49503

Phillip A. Brown # - #271566
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

Cler
U.S.
110
Gra