# 2

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
SOUTHERN DIVISION

Phillip A. Brown II,
    Plaintiff,

v.

Dr. Todd Cioffi et al,
    Defendants.

District Court :    23-cv-00987

Honorable :    Phillip J. Green

---

Phillip A. Brown II - #271566
In Rem Versum
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

Todd Cioffi    CPI Director
Kary Bosma    CPI Director
Calvin Prison Initiative
1855 Knollcrest Cir. SE
Grand Rapids, Mich. 49546
(616) 526 - 7998

Calvin University
Board of Trustees
President Michael LeRoy
President Wiebe Boer
Provost Noah Toly
Conduct Ofc. Martin Avila
3201 Burton Street, SE
Grand Rapids, Mich. 49546
(800) 688 - 0122

MDOC Dir. Heidi Washington
Educ. Manager Heather Gay
John Sutton
Jodi Heard
Mathew Mates
Classification Dir. Ripley
Unnamed Administrators
P.O. Box 30003
Lansing, Michigan 48909
(517) 335 - 1426

BILL OF PARTICULARS

(ON RECONSIDERATION)

## INTRODUCTION

When Phil Brown received a merits scholarship to Calvin University, he established entitlement to earn his Bachelor's Degree in Faith & Community Leadership. In fact, he signed agreements and was issued a student number. In one year, he performed well with a 3.86 GPA and earned all 25 credits.

Unfortunately, he was retaliated against for political and protected conduct and finally expelled by CPI Dir. Todd Cioffi and State officials. These threats of reprisal to free speech and his expulsion were executed using coercive State power and Calvin University without due process. These actions were tortuous, fraudulent, misleading, and unconstitutional which caused actual injury to Mr. Brown's person, finances, reputation, abilty to earn his degree, worship, and study in a faith based community. The facts will show Constitutional interest and coercive use of State power.

## BASIC ARGUMENT

The expulsion by Dr. Cioffi, with Calvin University and MDOC officals, was executed without the due process requirements of notice, opportunity, and a meaningful hearing before Brown's free speech rights were violated. This contradicted State Law (AR 791.3310), MDOC Policy, and Calvin Policy. This also violated fundamental rights of the Constitution and due process.

In the college context, students "facing long term exclusion from the educational process" must be afforded their fundamental due process rights. Doe v. Univ. of Cincinnati, 872 F.3d 393, 396, 399 (6th Cir. 2017) (Holding that the Goss standard applies requiring an actual hearing and evidence.) A school's departure from their own rules violates due process. Id. at 404-07

The Defendants violated established federal law AND their own Policy as it relates to any form of disciplinary charges and extreme sanctions. College students with a scholarship have a protectible due process interest.

CAUSES OF ACTION

1. 1st Amendment Retaliation for Protected Conduct
    A. Jodi Heard's Harrasment / Threats of Expulsion
    B. Pastoral Question & Letter to Warden / AA Mates
    C. Thank You Letters To Professors (Spring 2020)
    D. Acadmic Question To Prof. Rylaarsdam (Fall 2020)
2. Procedural Due Process
3. Substantive Due Process
4. 1st Amendment Violations
    A. Right to Freedom of Speech in Academia
    B. Right to Freedom of Thought
    C. Right to Freedom of Inquiry
    D. Right to Freedom of Expression
    E. Right to Freedom of Politics
    F. Right to Freedom of Religion / Belief
    G. Right to Freedom of Association
    H. Establishment Clause
    I. Free Exercise Clause
5. Viewpoint Discrimination
6. Equal Protection
7. Violations of 42 USC §1985 (3)
8. Violations of 42 USC §1986
9. Fraud and Conspiracy / Bad Faith
10. Breach of Contract / Tortious Interference
11. Theft / Unlawful Keeping of Property
12. Michigan Const. 1963, Art. 1, §5 (Speech/Writing/Expression)
13. Michigan Const. 1963, Art. 8, §1 (Encouragement of Education)
14. Ethnic Discrimination

BILL OF PARTICULARS

The Complaint (ECF #12) and Exhibits (ECF #16), needs a hearing to prove State actor status, but alleges sufficient facts for claims:

CLAIM I - 1ST AMEND. RETALIATION / BULLYING FOR PROTECTED CONDUCT

Dr. Todd Cioffi et al. overtly, implicitly, and explicitly subjected Mr. Brown to credible threats that chilled his free speech and ultimately terminated his Calvin scholarship for protected conduct as retaliation. These actions were designed to stifle, suppress, and retard his free speech and God given right to intellectual inquiry and expression in this academic context causing concrete injury to his person, reputation, and finances.

A.  Soon after arriving at MTU on 7/9/19, the Acting Classification Director Jodi Heard confronted Mr. Brown and indicated that she would get him kicked out of CPI and rode out because she determines who gets into the program and who stays. She directly stated that without her vital support, Mr. Brown would be subject to arbitrary, capricious, and unduly oppressive treatment. Over the next year, she entered educational spaces over 11 times (often in front of Dr. Cioffi) making inflamatory statements and threats to get Mr. Brown expelled from the CPI Program. It was initially unclear why Jodi Heard's action were directed at Mr. Brown. Over time, it appeared retaliatory for protected conduct of free speech and expression. More particularly, she also expressed racial animus toward white prisoners and Mr. Brown which pervaded the CPI program. Her repeated threats focused on Brown's scholarship status as a student in the CPI program. This conduct increased with her negatively influencing Dr. Cioffi against Mr. Brown. These repeated actions stifled Brown's free speech and expression while she motivated Dr. Cioffi to expel Brown not based on academics or behavior. She repeatedly told Cioffi, "We got to get him out of here." This was improper.

B. In Fall 2019, Brown spoke with CPI Pastor Jack Roeda about the procedure for pastoral care to assist with his handicapped (blind) visitor. He also wrote the MTU Warden & AA Mathew Mates about her "lost" visitor's application. Heard intentionally "lost" this application. Brown was then retaliated against by Heard and Mates who confronted him on 12/3/19 and Dr. Cioffi and other "unnamed" prison officials who actively sought to harass, degrade, humiliate, and retaliate. Cioffi, with MDOC agents, issued a threatening letter on 12/17/19 based on misleading information about these events and his proposal. Brown's speech and letter were the catalyst.

Dr. Cioffi publicly targeted him in front of other prisoners and students on 12/17/19. Dr. Cioffi and Mates did then actively harass, degrade, and directly threatened Mr. Brown's rights without due process using expulsion based on false and misleading terms that purported to address "concerns" in an advisement letter. On 9/14/20, CPI, Cioffi, & MDOC then falsely deemed these events as "discipline." These actions demonstrate an abuse of power, conspiracy, and stifled free speech using State power. These actions were used as a fraudulent basis for expulsion under the guise of "behavior" despite the clear basis of free speech and expression.

In fact, the suicide of an MTU Corrections Officer and the attempted suicide of a CPI student Jordan Sparks prompted Brown to submit a written proposal for a community leadership conference to address CPI mental health. The Thank You letter to Warden Burton and AA Mates addressed correcting a problem with a "lost" visitor application also mentioned interest about "possibly having a CPI leadership conference as... a morale booster."

This letter was not misleading in any way since Mr. Brown obtained express permission from Co-Director Kary Bosma to submit this proposal co-authored by Calvin Prof. Jack Bosscher. This was submitted through the LRS as instructed. Brown asked Pastor Roeda to inquire with Cioffi (without formal submission) about MDOC procedure for clergy to assist a blind visitor in the VR.

Mr. Brown did NOT submit his name or any official request. In fact, he was falsely accused before a response or procedure was conveyed by Cioffi. This inquiry was misconstrued, censored, and used to violate his State created right on visits. See PD 05.03.130 These actions by Dr. Cioffi, CPI, and State officials show retaliation and stifled his right to free speech, religion, expression, & association causing actual injury to him. This inaccurate and misleading information was later used along with state power to cause injury through expulsion. The 12/17/19 'advisement' letter threatened expulsion. In fact, Mr. Brown was later expelled based upon these lies by Dr. Cioffi and his misleading and false narrative without process.

C. At the end of Spring Semester, while under a no contact COVID order, Mr. Brown submitted a final 'Thank You' Letter to his professors via LRS that discussed information they shared, program ideas, and a traditional christian blessing. Dr. Cioffi again censored these communications and criticized the content and style of his letter. He again threatened Mr. Brown's scholarship status in the Calvin program in this 6/9/20 letter sent through the LRS. These actions, including his communications inquiring why the letter was not sent, were retaliatory in nature for protected conduct. There was no legitimate pedagogical or penological interest warranting such extreme, negative, and harsh threats under the guise of 'behavior' or "expectations." These actions directly impacted the expulsion and stifled his free speech. Furthermore, many other prisoners were permitted to send opinion letters containing personal sentiments and other communications.

D. In Fall 2020, Professor Rylaarsdam sent new students a video and questionairre for his Christian Formation Class. Brown's response was censored by Cioffi and improperly used to expel him without due process.

This interactive class was described as a mentorship style class with active participation between the Professor and student. It uses scripture applied through life experiences. Prof. Rylaarsdam explicitly told students to submit any questions they had using the LRS computer drive. Mr. Brown followed instructions, completed the Student Profile Questionairre, and attached one question at the bottom related to the Professor's Curriculum Vitae, background, and life experiences as a basis for teaching this class.

This key question inquired about his world view and potential biases which was one particular focal point for this class. This question was explicitly qualified and framed "in the context of this class."

The Student Profile Questionnaire response, in part, also addressed the prompt which asked about personal involvement in prison church services. The response indicated that Mr. Brown did not participate as much in church services because some individuals were misusing this time for homosexual activity and he did not approve or want to be associated with this misconduct. He viewed this conduct in church as offensive to his faith and christian community. Dr. Cioffi again censored these communications and misrepresented his attached question as an improper request for personal information. In fact, it was not. This misconstruction and inaccurate information was used as a trigger and basis to stifle, censor, and expel Mr. Brown as retaliation for free speech, religion, viewpoints, and association.

Mr. Brown also contends that his rhetoric about improper homosexual activity in church services was the basis (though not admitted), to stifle, suppress, intimidate, and revoke his scholarship for protected conduct of speaking his truth, expressing his viewpoints, freedom of religious practice, and freedom of thought without fear of reprisal or even subtle forms of interference. These basic rights are protected by the Constitution, MDOC Policy, and Calvin University Policy on expression.

CLAIM II - PROCEDURAL DUE PROCESS

Dr. Todd Cioffi et al knowingly violated Mr. Brown's procedural due process rights to proper charge, notice, hearing on the facts, and appeal where an established liberty and property interest exist. We ask this Court to HOLD that the minimum standard in Goss v. Lopez, 419 U.S. 565 (1975) applies to State endorsed expulsions and suspensions longer than 10 days.

Defendants provided zero due process for the ultimate punishment: expulsion. Unlike in Roth, Brown had legitimate entitlement to completing his five year college degree program showing objective and verifiable terms of this contractual relationship between the student, the State (MDOC), and Calvin University itself. This academic scholarship shows entitlement to protection. See Roth v. Bd. of Regents, 408 U.S. 564, 577 (1972).

> "A college scholarship is a protected property interest because it advances an opportunity for a student to attend a college or University that he or she would otherwise be unable to attend or afford to attend."
>
> Coleman v. Newburgh Schools, 319 F.Supp.2d 446, 453 (S.D. NY 2004)

Mr. Brown has an established liberty and property interest in academic scholarship, community relations, ability to study, learn, access the library, computer agreement, to create writings, remaining in good standing at Calvin University, his honor and good name, and speak to his professors. These entitlements have (3) sources: Contract, Custom, and Policy.

Mr. Brown's entitlement was based on simple agreement with the MDOC, CPI, Calvin University, and Co-Directors for this bachelor degree program. His scholarship, admission as a Calvin student, and express policies and procedures for Calvin University and the MDOC both contain mandatory language with substantive predicates before a student can be disciplined or expelled. These procedures were not followed which denied him due process.

CLAIM III - SUBSTANTIVE DUE PROCESS

Dr. Todd Cioffi et al violated Mr. Brown's right to be free from a grossly disproportionate punishment to any perceived offense (contrary to Policy) and undue intereference with his right to continued enrollment from State sponsored agents which has "no legitimate end" in light of the facts, his honor student status (good grades), and community involvment.

In Mr. Brown's case, the Defendants (Dr. Cioffi, CPI, Calvin Univ., and MDOC officials) worked together (conspired) (contrary to policy) and expelled Mr. Brown from Calvin University in a way that is: 1) Grossly disproportionate, and 2) Violated his basic right to continued education

The Supreme Court has historically assumed that a college student has the right to continued enrollment without undue interference under the substantive due process clause. See Regents of U of M v. Ewing, 474 U.S. 214 (1986); see also Stevens v. Hunt, 646 F.2d 1168, 1169 (6th Cir. 1981).

We ask the Court to hold that Mr. Brown has a substantive due process right to be free from undue interference by State authorities (CPI & MDOC), and to be free from any form of threat to his academic scholarship.

Concurrently, when the State (MDOC) or educational authority impose a "grossly disproportionate" punishment or penalty in relation to the offense which seems arbitrary, or not rationally related "to any legitimate end," it may violate substantive due process. See Petrey v. Flaugher, 505 F.Supp. 1087, 1091 (E.D. Ky. 1981); see also Griswold v. Connecticut, 381 U.S. 479, 482 (1965) (Explaining that the right to seek higher education existed historically before the Constitutional Amendments and that "The State may not... contract the spectrum of available knowledge" against a man.)

The Supreme Court has distinguished dismissals for "academic reasons" from disciplinary decisions for suspension or expulsion which require a hearing. See Bd. of Curators v. Horowitz, 435 U.S. 78 (1978).

CLAIM IV (§A-G) - 1ST AMENDMENT VIOLATIONS

Dr. Cioffi et al violated Mr. Brown's right to: A. Free Speech; B. Thought; C. Inquiry; D. Expression; E. Politics; F. Religion / Belief; and G. Association using coercive State power without guaranteed due process. The State approved and encouraged these unlawful actions by it's agents. See Gitlow v. New York, 268 U.S. 652, 666 (1925).

Every time Brown would exercise his rights in the context of his school work and/or the community, he was substantially targeted, scrutinized and censored; thus subject to adverse, arbitrary, and negative consequences. These negative actions by Dr. Cioffi and CPI were approved by the MDOC who deemed it acceptable to enforce these "said expectations" that repeatedly changed depending on the day and person. This was coercive and subjective.

Brown's political, personal, and individual viewpoints were a motivating factor in the fact that his Constitutional rights were repeatedly stifled when CPI and Dr. Cioffi responded with discrete hostility, actual threats, false accusations, and pervasive targetting to imply or express that those who do not conform absolutely are subject to reprisal and then cast out. This method of <u>socialist indoctrination</u> is inconsistent with freedom in college academia and Calvin University's Policy on freedom of expression.

Dr. Cioffi attempted to create a misleading narrative that Mr. Brown somehow did not follow instructions, directions, or "said expectations." Again, the enforced rules often varied, were vague, changing, incoherent, or simply laughable on countless issues. Cioffi used coercion to compel Brown to <u>NOT</u> think critically, develop a comprehensive world viewpoint, and/or consider more than one narrative. This was reductionist, degrading, and oppressive. He used political indoctrination to control the mind, thoughts, and ideas of CPI students in Calvin University's CPI program in a way that negatively polarized the community and violated Brown's basic rights.

Dr. Cioffi et al acted as if they were entitled to dictatorily retaliate against Brown as a free thinker if he disagrees even a little. This is not the hallmark of freedom inherent in all American Universities. Merging totalitarian power of a private university with a <u>public actor</u> (LLC) while combining with the coercive power of the State government must adhere to the limits of Constitutional principals under established in federal law. We ask this Court to HOLD that Mr. Brown has a Constitutional right to:

1. Freedom of Speech
2. Freedom of Thought
3. Freedom of Inquiry
4. Freedom of Expression
5. Freedom of Politics
6. Freedom of Religion
7. Freedom of Association

Mr. Brown contends that the CPI program, Calvin University, and the program Director Dr. Todd Cioffi acted in a manner (combined with State power) that violated his personal rights and caused actual injury.

This stifled the exercise of his rights and carried out the ultimate punishment in academia when they expelled him for protected conduct.

Dr. Cioffi once said to both Kary Bosma & Mr. Mates, "I am God here!" This God complex and character sought to punish those who would disagree in any way about anything. This has nothing to do with behavior or academics. Rather, it is about socialist and liberal indoctrination under the guise of religion and righteousness. Jesus warned the pharisees about these actions. Dr. Todd Cioffi is a modern day pharisee whose promotes his emperor worship, and seeks the praises of men who worship his money, power, and influence. Mr. Brown's understanding of these facts exaggerated this core insecurity.

## CLAIM IV (H & I) - ESTABLISHMENT & FREE EXERCISE CLAUSE

The merging of authority and decision making between CPI, Calvin University, and the MDOC through various agents as it relates to religious dogma and behavior calls into focus the Establishment and Exercise Clauses.

CPI's program requires and compells a religious dogma that is rooted in politics. Here, the progressive left systematically excludes others viewpoints. This was the direct motive for targeting and expulling Mr. Brown. See Epperson v. Arkansas, 393 U.S. 97, 106 (1968) (Holding that schools may not compel a religious dogma that excludes other points of view.) See also Bd. of Educ. v. Allen, 392 U.S. 236, 242 (1968) (Establishment clause requires that the State exercise neutrality to religion or entity.); See Engel v. Vitale, 370 U.S. 421, 424-25 (1962) (Holding that the State encouraged or sponsored a religious activity.)

In this case, the CPI program is an artificial dogma endorsed by State power that has acquired massive financial and political influence at the highest levels of State government. The coercive power of each is united under the theory of religion which compels individuals to act a certain way. This is where the free exercise clause argument comes into play. If the CPI student does not speak or act in a way pleasing to the religous authority (CPI Director), he uses coercive methods and MDOC to remove and expel them. This is an unholy alliance of State power and private religious political influence that compels certain thoughts, ideas, and actions under religion. In reality, what is going on is actually discrimination, exclusion, and indoctrination of a political nature under the guise of good religion. Importantly, this is prohibited by the Establishment Claus and diminished Mr. Brown's right to exercise, practice, and worship his God according to the dictates of his own conscious. (See also Mich. Const. 1963, Art. 1, §4). This infringed on the free exercise clause and his basic due process rights.

## CLAIM V - VIEWPOINT DISCRIMINATION

Dr. Cioffi, Kary Bosma, & CPI engaged in viewpoint discrimination against Mr. Brown by using Calvin University and the MDOC to censor his writings and public advocacy campaign which exposed important facts in an editorial article titled: "Michigan Taxpayers Support Big Prisons."

This was a matter of public interest and Plaintiff was denied the right to submit his essay topic, content, values, speech, and final draft when CPI falsely declared they now had a stipulation with the MDOC to preclude it.

## CLAIM VI - EQUAL PROTECTION

Dr. Cioffi, CPI, and Calvin University denied equal protection of the law and Calvin University Policy when they treated Mr. Brown differently than other Calvin University students under the code of conduct and through the Office of Student affairs which entitles all students to a hearing and appeal under law and procedure. These actions were encouraged and approved by President LeRoy and Boer, Martin Avila, and the Board of Trustees. These actions were also encouraged and approved by MTU workers (Heard, Sutton, & Mates) and MDOC Officers: Education Manager Heather Gay and Director Heidi Washington. These individuals had a duty to protect.

## CLAIM VII - CONSPIRACY TO VIOLATE CIVIL RIGHTS - 42 USC §1985(3)

Dr. Cioffi et al engaged in an agreement to injure Mr. Brown by these unlawful actions which caused concrete harm to his person and his property. These Defendants each committed acts in furtherance of this objective under the color of state law, university authority, and through overt acts which shows they were directly aware of substantial harm to the Defendant. This includes perpetuation of falsehoods, continued participation, and the forging of illegal classification documents which violated MDOC Policy and Calvin University Policy which both prohibit these actions without process.

Mr. Brown has a right to be free from governmental conspiracy to violate his civil rights to free speech, expression, christian identity, and due process of law. The precise details and express agreement is not necessary to prove, although Brown can show participation by overt acts to support, encourage, consent, and acts of omission where clear duty exists. See Spurlock v. Satterfield, 167 F.3d 995, 1004 (6th Cir. 1999)

### CLAIM VIII - VIOLATIONS OF 42 USC §1986 - NEGLECT OF CONSPIRACY

Dr. Cioffi et al were all notified of the wrongful acts in violation of Federal law, MDOC Policy, Calvin University Policy, and the Constitution in a formal letter to State and College Officials. However, they chose to ignore and neglect the clear cut evidence showing that Mr. Brown's basic rights were violated in a way that is contrary to established federal law. This claim shows a viable action since reasonable diligence could have corrected this injustice and legal malfeasance but Defendants are guilty. This action was commenced within one year after all parties were notified.

### CLAIM IX - FRAUD & CONSPIRACY / BAD FAITH

Dr. Cioffi et al engaged in a civil conspiracy to injure Mr. Brown by unlawful means contrary to MDOC Policy, Calvin Policy, good faith, and established federal law. The material facts show specific intent to expell him from academic scholarsip without due process and upon on misleading and false information. This unified objective and their method was admitted when he said on 12/17/19, "We're going to put somebody on the bus and ship them out of here!".

Dr. Cioffi stated this intention in front of a room full of students and Mr. Brown on 12/17/19 at 1:10 p.m. before he confronted and berated Mr. Brown with State agent Mathew Mates particapting.

## CLAIM XI - UNLAWFUL TAKING OF PROPERTY - 42 USC §1982

Mr. Brown invokes this Court's Federal jurisdiction since Dr. Cioffi et al have unlawfully denied Mr. Brown the right to his lawful property using State authority when they took his scholarship, academic work product, papers, computer files, notes, and information that he worked on for a year. The actions denied due process on these important property rights.

## CLAIM XIV - ETHNIC DISCRIMINATION

Mr. Brown was discriminated against by Dr. Cioffi, CPI, and Calvin University when they denied him access to his academic paperwork, records, and stifled his re-application in favor of a latino prisoner who had already been rejected for academic deficiencies where these actions were done without any basis in reason, fact, or letter indicated the final decision. Mr. Brown contends that this decision was arbitrary and discriminatory.

Submitted For Sufficiency of Factual Notice,

*Phillip A. Brown II*
1-17-24